IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FRANK BARNETT, JR. | * |
| | * |
| v. | *   Civil No. JKS-10-3331 |
| | * |
| MICHAEL J. ASTRUE | * |
| Commissioner of Social Security | * |
| | * |

**MEMORANDUM OPINION**

Plaintiff Frank Barnett, Jr. brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the Act). Both parties' motions for summary judgment are ready for resolution, *see* ECF Nos. 16 and 34, and no hearing is deemed necessary. *See* Local Rule 105.6. For the reasons set forth below, Barnett's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

1. **Background.**

Barnett filed applications for DIB and SSI on October 26, 2007, alleging disability beginning on June 1, 2006. R. 139, 142. Barnett later amended these applications to allege disability beginning on November 21, 2007. R. 160. The Commissioner denied the applications initially and on reconsideration. R. 70, 77, 79. Barnett then requested an administrative hearing, R. 81, which was held on January 22, 2010, before Administrative Law Judge (ALJ) William Clark. R. 11. On April 8, 2010, the ALJ issued a decision denying Barnett's applications because the ALJ found that Barnett could perform work existing in the national economy and, therefore, was not disabled. R. 51-65. After the Appeals Council denied Barnett's request for review of the ALJ's decision, R. 1-3, that decision became the Commissioner's final decision.

2. **ALJ's Decision.**

The ALJ evaluated Barnett's claim using the five-step sequential process set forth in 20 C.F.R. § 404.1520.[1] At step one, the ALJ found that Barnett had not engaged in any substantial gainful activity since November 21, 2007, the alleged onset date of his disability.  R. 56.  At step two, the ALJ found that Barnett had two severe impairments: degenerative disk disease and depression.  R. 56.  At step three, the ALJ found that Barnett did not have an impairment or combination of impairments that met or medically equaled an impairment set out in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 58.  The ALJ assessed Barnett's residual functional capacity (RFC), found that he could perform light work that was unskilled, permitted sitting or standing "at will," would not require working around hazardous machinery or unprotected heights, climbing ropes, ladders, or scaffolds, or more than occasional contact with the public or coworkers, R. 60, and concluded that he was unable to perform his past relevant work.  R. 63. At step five, relying in part on vocational expert (VE) testimony, the ALJ found that, considering Barnett's age, education, work experience, and RFC, he could perform work existing in significant numbers in the national economy, including the following positions: café attendant, mail sorter, and pricer/marker.  R. 64.  Accordingly, the ALJ concluded that Barnett was not disabled within the meaning of the Act.  R. 65.

3. **Standard of Review.**

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards.  42

---

[1] Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity.  20 CFR 404.1520(b).  At step two, the ALJ must decide whether the claimant has a medically determinable impairment that is "severe."  20 CFR 404.1520(c).  At step three, the ALJ is required to determine whether the claimant's impairment meets the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  20 CFR 404.1520(d), 404.1525, and 404.1526.  In step four, the ALJ must determine the claimant's residual functional capacity, *see* 20 CFR 404.1520(e), and decide whether the claimant can perform the requirements of her past relevant work.  20 CFR 404.1520(f).  Finally, in step five, the ALJ must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience.

U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotation marks omitted). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

**4. Discussion.**

Barnett argues that the ALJ: (1) improperly evaluated his credibility; (2) improperly weighed Dr. Rao's opinions; (3) erred by not finding that Barnett had an impairment that met or equaled the medical criteria of Listing 12.04; (4) asked an improper hypothetical question to the VE that did not include all of the limitations caused by his impairments; and (5) improperly labeled two of Barnett's conditions as "severe" without accounting for these conditions in the RFC assessment. ECF No. 16 at 23-29. None of these arguments is persuasive. The ALJ's decision is supported by substantial evidence and will be affirmed.

**A. The ALJ's Evaluation of Barnett's Credibility**

Barnett argues that the ALJ improperly assessed his credibility for several reasons. *Id.* at 3. First, he contends that the ALJ should not have considered his failure to take prescribed medication, ECF No. 16 at 3, 19, 20, claiming that the only reason he failed to take his prescribed medication was because he could not afford it. *Id.* This contention fails; Barnett does not point to any evidence that he failed to take prescribed medication because of his financial status. The record shows that Barnett took his medication sporadically. In March 2009, he reported that it was not effective. R. 432. In addition, the medication list discussed by the ALJ shows that Barnett was required to pay only nominal amounts for his medication. R. 57, 58, 61,

447-50. Thus, the record does not support the claim that Barnett's financial status prevented him from taking his prescribed medications.

Barnett also contends that the ALJ improperly considered Barnett's lifetime earnings in determining his credibility. ECF No. 16 at 3-4. The ALJ found that Barnett's "lifetime earnings of $60,789 after 21 years of available time after he dropped out of school at age 16, suggests a poor work ethic. His earnings average [of] only $2,895 a year, [is] far below even minimum wage levels." R. 63. Barnett contends that this observation "reeks of bias." ECF No. 16 at 3. While a poor work history may not always be indicative of a poor work ethic,[2] in this case, the ALJ gave Barnett an opportunity to explain his erratic work history, R. 28, and offered numerous reasons for discounting Barnett's credibility.[3] Under these circumstances, the ALJ's reference to Barnett's poor work history does not indicate a biased evaluation of his credibility. Substantial evidence supports the ALJ's credibility determination.

**B. The ALJ's consideration of Dr. Rao's opinions**

Barnett argues that the ALJ improperly weighed Dr. Rao's opinions. ECF 16 at 23-26. Specifically, Barnett contends that the ALJ erred by separately weighing Dr. Rao's opinions, i.e., by giving "most weight" to Dr. Rao's treatment records, "somewhat less weight" to the assessment report of March 2, 2010, and "no weight" to the assessment report of September 27,

---

[2] *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. N.Y. 1998) ("Logically, poor work history could support one of two conclusions. On the one hand, just as a good work history may be deemed probative of credibility, a poor work history can reasonably be deemed to have the opposite significance. However, a poor work history might also support an inference that a claimant's testimony of disability is truthful. A claimant's failure to work might stem from her inability to work as easily as her unwillingness to work. Therefore, a consideration of work history must be undertaken with great care. . . . [I]t bears emphasizing [however] that work history is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony.").

[3] For example, the ALJ noted that Barnett initially stated that he did not bite his tongue during his October 2007 seizure, but later claimed that he had. R. 17, 57, 238, 350. The ALJ also noted that although Barnett sometimes claimed he had seizures every two to three months, the record did not document any seizures after October 2007 and only three total seizures between 1980 and 2004. R. 57, 423, 433. Barnett also testified at the hearing that he experienced severe back pain every day, R. 15, but he told physicians from East Baltimore Medical Center (EBMC) that his back pain was intermittent and sometimes "minimal." R. 432.

2008. *Id.* at 23-24. Barnett contends that the ALJ cannot "cherry-pick the parts of the treating physicians opinion by which to be bound" and thus should have given controlling weight to all of the reports because the record does not contain evidence that is inconsistent with those reports. *Id.* at 24-26.

A treating source opinion is given controlling weight if it is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p, 1996 WL 374188. Conversely, "if a [treating] physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

Dr. Rao's March 2010 report concluded that Barnett suffered from marked restrictions with his daily living activities because of back pain. R. 454. The ALJ gave less weight to this report because it was inconsistent with Dr. Rao's treatment notes and with reports of EBMC physicians following Barnett's date of alleged disability. R. 63. For example, in December 2008, an examination revealed some lower lumbar tenderness but was otherwise normal. R. 61, 385. In March 2009, Barnett described his back pain as "minimal." R. 61, 432. In October 2009, a physical examination by Dr. Rao showed that Barnett had normal muscle tone and strength, normal spinal mobility, no spinal deformities, and intact strength in his lower extremities. R. 61, 425.

The ALJ also explained that the disabling limitations in the March 2010 report were inconsistent with Barnett's activities of daily living. R. 63. Barnett acknowledged that, after his disability onset date, he performed personal care activities, such as bathing and dressing; shopped for food and clothing in stores, rather than by phone, mail, or computer; washed

laundry; prepared meals on a daily basis; and performed household chores such as sweeping, mopping, and ironing.  R. 24, 25, 205-06.

Dr. Rao's March 2010 report is also inconsistent with the examination findings of Dr. Gregory Ross, R. 350-54, which the ALJ observed did not reveal a disabling physical impairment.  R. 61-62.  Dr. Ross found that Barnett had full range of motion of his upper and lower extremities, a normal posture, full range of motion of his cervical and lumbar spine, and full motor strength in his upper and lower extremities.  R. 61-62, 352.  Dr. Ross concluded that Barnett "should be able to sit, stand, walk, hear, speak, and travel without problems."  R. 353.  For all of these reasons, the ALJ's decision to give less weight to Dr. Rao's March 2010 report is supported by substantial evidence.

It was also proper for the ALJ to give no weight to Dr. Rao's September 2008 report.  That report was completed during an initial evaluation and was based almost entirely on Barnett's subjective complaints.  R. 63, 377-78.  Moreover, at the time of the September 2008 report, Dr. Rao was not a treating source.  A treating source is a claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant] . . . with medical treatment . . . and who has, or had, an ongoing treatment relationship with [the claimant]."  20 C.F.R. §§ 404.1502, 416.902.  Dr. Rao had not established an ongoing treatment relationship with Barnett at the time she completed the September 2008 report; thus her opinion was not entitled to special deference.  The ALJ's decision to discount Dr. Rao's September 2008 report as inconsistent with the other evidence was proper.

In sum, the ALJ properly evaluated Dr. Rao's opinions.  The ALJ provided valid reasons for the weight he gave Dr. Rao's opinions and he supported those reasons with specific references to the evidence.

### C. The ALJ's conclusion that Barnett did not have an impairment that medically equaled Listing 12.04

Barnett argues that the ALJ erred by finding that Barnett did not have an impairment that met or medically equaled the medical criteria of Listing 12.04.  ECF No. 16 at 29.  The relevant criteria of Listing 12.04 require the claimant to have at least two of: (1) a marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  *Corcoran v. Astrue*, 2009 U.S. Dist. LEXIS 86784, *56 n.9 (D. Md. Sept. 22, 2009).  Barnett cites Dr. Rao's March 2010 report, R. 452-55, which opines that Barnett had various marked limitations and had experienced episodes of decompensation.  However, as discussed above, the ALJ gave little weight to this report because its conclusions conflicted with other substantial evidence in the record.  No other report concluded that Barnett has any marked limitations.  The ALJ properly declined to conclude that Barnett had impairments that equaled the Listing 12.04 criteria.  R. 63.

### D. The ALJ's hypothetical question to the VE

Barnett contends that the ALJ's hypothetical question to the VE was flawed in three respects.  ECF No. 16 at 26-28.  First, Barnett argues that the ALJ's hypothetical contained none of the limitations noted by Dr. Rao.  ECF No. 16 at 27.  In fact, the hypothetical question included several limitations contemplated by Dr. Rao, including, *inter alia*: having a sit or stand option; not working with hazardous, moving machinery or unprotected heights; not climbing ladders, ropes or scaffolds; and not having more than occasional contact with the public and coworkers.  R. 38.  That the ALJ did not include *all* of the limitations suggested by Dr. Rao—i.e., that Barnett cannot lift 10 pounds, must never be exposed to extreme cold or heat, or to chemicals, dust, fumes, odors, heights and only occasionally exposed to humidity or noise—is of

no moment. As discussed earlier, the ALJ properly found that these limitations were not supported by other evidence in the record. Alleged impairments that are adequately controlled, deemed incredible, or not supported by substantial evidence, need not be included in the hypothetical question to the VE. *See McMillian v. Astrue*, 2011 U.S. Dist. LEXIS 89497 at *10 (D. Md. Aug. 11, 2011) ("The [hypothetical] question . . . need include only those limitations that the ALJ deems credible."). The Fourth Circuit has made clear that "it is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." *Fisher v. Barnhart*, 181 Fed. Appx. 359, 364-65 (4th Cir. 2006). As explained in *Fisher*, "[a] claimant very well might have some impairments under control such that they do not manifest themselves in any way that would limit the claimant's capacity for work." *Id.* The ALJ's hypothetical question to the VE accurately reflected the RFC limitations and thus the question was proper.[4]

Second, Barnett contends that the ALJ erred when he found that Barnett could perform unskilled work with a sit/stand option. R. 60. Barnett cites SSR 83-12, which states that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83-12, 1983 WL 31253, at *4. However, while a sit/stand option may not be "ordinarily" available for unskilled work, the ruling goes on to state that "[i]n cases of unusual limitation of ability to sit or stand, a [VE] should be consulted . . . ." *Id.* That is what the ALJ did in this case, asking the VE whether an individual of Barnett's age, education, work

---

[4] Barnett is particularly troubled that the ALJ did not incorporate the opinion of Dr. P. H. Moore, a state agency physician, who indicated that Barnett had trouble balancing. R. 371. However, the majority of the medical testimony indicated that Barnett had no trouble balancing. Dr. Ross found that Barnett was able to walk without his cane, walk on his toes and heels, and squat. R. 352. Dr. Johnston, another state agency physician, concluded that Barnett had no trouble balancing. R. 358. Most importantly, Dr. Rao, Barnett's treating physician, never suggested that balancing was an issue. Accordingly, Dr. Moore's opinion regarding Barnett's alleged balancing issue was not given great weight and was properly excluded from the hypothetical question.

experience, and RFC, including a sit/stand option, could perform unskilled work in the national economy, and the VE testified affirmatively. R. 38-39.

Barnett also contends that the ALJ erred by failing to state the frequency with which Barnett would need to alternate between sitting and standing. ECF No. 16 at 27-28. However, the ALJ stated that Barnett needed to sit or stand "at will." ECF No. 16 at 28. Such a finding indicates that a claimant may alternate between sitting and standing at his discretion or "whenever [he] chooses to do so," *McMillian*, 2011 U.S. Dist. LEXIS 89497 at *10, and satisfies the requirement that the ALJ state the frequency at which the claimant may sit or stand. *See* SSR 96-9p, 1996 SSR LEXIS 6 at *18-19.

Third, Barnett asserts that the ALJ erred by not referring by name to various impairments in the hypothetical question posed to the VE, including: seizures, depression, "probable" migraine headaches, brain damage, hepatitis B, a peptic ulcer, and chest pain. ECF 16 at 28. However, as stated above, the ALJ is not required to reference all of a claimant's impairments in the hypothetical question to the VE. Barnett cites no evidence and makes no argument that he had any functional limitations resulting from these impairments. In addition, the ALJ found that these impairments did not impose limitations beyond those the ALJ incorporated into his hypothetical question. Accordingly, the ALJ properly excluded these impairments in his hypothetical question to the VE.

**E. The ALJ's consideration of Barnett's back impairment and depression**

Barnett argues that the ALJ erred by listing his alleged degenerative disk disease and depression as severe impairments at step two of the sequential evaluation but failing to account for these ailments at step four. ECF No. 16 at 2. This argument was recently considered and rejected by this Court in *Taylor v. Astrue*, 2012 U.S. Dist. LEXIS 11307 at *22-23 (D. Md. Jan.

31, 2012).  The Court explained:

> The findings that the ALJ must make at steps two and four . . . are quite different.  Plaintiff's burden of showing a severe impairment at step two is only a "de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (internal brackets and quotation marks omitted).  An ALJ may only declare an impairment to be "not severe" if the medical evidence on record clearly establishes that the impairment is "a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id.* (internal quotation marks and citation omitted).  Furthermore, any doubt or ambiguity in the evidence at step two should be resolved in the claimant's favor and the ALJ should continue with the sequential evaluation. *See* SSR 85-28, 1985 SSR LEXIS 19, at *8, 1985 WL 56856, at *4.  At step four, on the other hand, the ALJ must look to all the evidence on record and determine more precisely how, if at all, the claimant's impairments limit her ability to work.  It is possible, therefore, for an ALJ to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work.  In view of these differing standards, the court finds no error in the ALJ's decisions at steps two and four.

Based on the same reasoning, this court finds no error in the ALJ's decisions at steps two and four.  Finally, even if the ALJ erred by failing to account for these impairments, the error was harmless because Barnett has failed to point to any specific limitation that he believes should have been included in the RFC.

**5. Conclusion.**

For the foregoing reasons, Barnett's motion for summary judgment will be denied and the Commissioner's motion for summary judgment will be granted.


Date: February 11, 2013                                                            /S/
                                                                       JILLYN K. SCHULZE
                                                                       United States Magistrate Judge